UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ERIC RAY CASTRO,

Plaintiff,

v.

OFFICER C. GANOT, *et al.*

Defendants.

Case No.: 25-cv-1438-DMS-DEB

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR INVOLUNTARY DISMISSAL**

**[DKT. NOS. 119, 120, 121]**

This Report and Recommendation on Defendant San Bernardino County's Motion for Involuntary Dismissal pursuant to Federal Rule of Civil Procedure 41(b) (Dkt. No. 119) is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(e).[1] The County's Motion seeks dismissal of Plaintiff Castro's complaint as a sanction for Castro's: (1) refusal to answer 107 questions at this deposition; and (2) failure to pay Court-imposed sanctions ordering him to pay the costs of that deposition. For the reasons discussed below, the undersigned recommends

[1] Defendants California Highway Patrol and Escondido BCG join in the Motion. Dkt. Nos. 120–21. Castro filed an opposition. Dkt. No. 122. The County filed its Motion on behalf of Defendant San Bernardino County Sheriff's Department, stating the Sheriff's Department was "erroneously sued and served." Dkt. No. 103 at 8.

**DENYING** the Motion and **GRANTING** the lesser sanction of precluding Castro from: (1) introducing any evidence (either on summary judgment or at trial) about the topics on which he improperly refused testify; and (2) taking any depositions of his own. The Court also recommends issuing a final warning to Castro that any future failure to comply with Court orders or discovery obligations may result in dismissal of his case.

## I. Procedural & Factual Background

Castro's operative complaint alleges eleven causes of action against Officer Ganot, the San Bernardino County Sheriff's Department, the California Highway Patrol, and North County Buick GMC Cadillac (dba, My Escondido BCG, LLC) ("Escondido BCG"). Dkt. No. 80 (second amended complaint). Castro's claims arise from his purchase of a GMC truck from Escondido BCG, the subsequent repossession of the truck, Castro's arrest by the San Bernardino Sherriff's Department, and the seizure of several firearms from the property where the truck was repossessed. *Id.*

On March 19, 2026, Defendants took Castro's deposition. Dkt. No. 103 at 3. Castro refused to answer 107 questions. *Id.*[2]

Defendant County of San Bernardino then filed a Motion to Compel Castro's Deposition Testimony and sought $4,698.55 in sanctions to recover its attorney's fees and costs incurred in the deposition. Dkt. No. 103. The Court granted the Motion, finding "Castro's objections and refusals to answer were made in bad faith and were intended to frustrate Defendants' ability to take a meaningful deposition." Dkt. No. 108 at 3. The Court ordered Castro to pay $4,083.55 ($2,124.80 in court reporter costs, $831.25 in

---

[2] Beginning with Defendants' standard foundational deposition questions, Castro repeatedly answered, "I object. I'm not going to answer that question." *See, e.g.*, Dkt. No. 126-2 at 6 ("Q What's your current occupation? A I'm going to object. I'm not going to answer."). He also refused to answer substantive questions, including for example questions about the subject truck. *See, e.g., id.* at 35 ("Q [H]ave you ever attempted to verify that the funds that you intended to pay for the vehicle were actually transferred to the dealership? A Yeah. I object to the question. Relevance. I'm not going to answer that.").

videographer costs, and $1,127.50 in attorney's fees). *Id.* The Court set a May 15, 2026 deadline for Castro to pay the sanctions and make himself available for another deposition. *Id.*

On May 5, 2026, Castro filed Motion for Relief from Sanctions Order or, in the Alternative, for Payment Plan or Stay. Dkt. No. 109. Castro's Motion claimed he "lacks the financial ability to pay the ordered sanctions in a lump sum by the deadline imposed." *Id.* at 1. Castro proposed the following alternatives: (1) reducing the amount of sanctions; (2) imposing a reasonable monthly payment plan; (3) extending the payment deadline; and/or (4) staying enforcement of the sanctions order pending further proceedings in the case. *Id.* at 2.

On May 7, 2026, the Court held a hearing and granted-in-part and denied-in-part Castro's Motion. The Court reduced the amount payable by May 15, 2026 to $2,956.05 (the cost portion of the sanctions) and extended the deadline for Castro to pay the remaining $1,127.50 (the attorney's fee portion of the sanctions) to August 7, 2026. Dkt. No. 114.

Castro did not make the $2,956.05 payment by the May 15, 2026 deadline. Dkt. No. 119-3.

At a May 19, 2026 status conference, Castro confirmed he had not paid any portion of the sanctions ordered. *See* Dkt. No. 119 at 8. To date, Castro has not paid any part of the sanctions, nor indicated he would do so in the future. Castro's only offer was to offset the payment against any judgment he may obtain in this case. Dkt. No. 129 at 5.

On May 27, 2026, San Bernardino County filed the current Motion, arguing that Castro's refusal to comply with the May 7 sanctions order and his noncompliance with discovery obligations warrant dismissal of the action with prejudice as to all Defendants. Dkt. No. 119.

Castro countered that his failure to pay the $2,956.05 by May 15 resulted from financial hardship, not an intent to abandon the litigation or disregard the Court's authority. Dkt. No. 122 at 3. Castro also documented post-sanction efforts to litigate the case, including serving supplemental responses and productions to Defendants' Requests for

Production, withdrawing disputed deposition notices, producing certain financial records, corresponding with defense counsel, and appearing at the May 19 status conference. *Id*. at 3.

On June 26, 2026, the Court held a hearing on this Motion. Castro confirmed he has not paid any part of the sanctions against him. Dkt. No. 128 at 4. Castro could give no timeline within which he could make a payment or any assurance that he would ever pay. *Id.* at 7–9.

At the conclusion of the hearing, the Court announced a tentative ruling to recommend a lesser evidentiary sanction, pursuant to Rule 37(b)(2)(A)(ii), precluding Castro from offering evidence on the topics he refused to answer at his deposition. *Id.* at 9–18. The Court ordered supplemental briefing on the tentative ruling, including giving the parties the opportunity to propose topics that fall within the evidentiary sanction. *Id.* at 18–19. The County and Castro submitted supplemental briefs. Dkt. Nos. 126, 129. Upon review of those submissions, the Court now recommends denying the County's Motion to Dismiss and imposing lesser evidentiary sanctions against Castro.

## II. Legal Standard

Both Rule 37 and Rule 41 provide for dismissal of an action as a possible sanction for a violation of a court order. The standards governing dismissal for a party's failure to comply with a court order are similar under both rules. A district court may dismiss an action for failure to comply with any order of the court under Rule 41(b). *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."). Similarly, when a party disobeys a discovery order, Rule 37(b) provides several options, including terminating sanctions. Fed. R. Civ. P. 37(b)(2); *see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig*., 460 F.3d 1217, 1227 (9th Cir. 2006) ("Rule 37(b)(2)(C) allows dismissal for failure to comply with discovery plans and orders, and Rule 41(b) permits dismissal for failure of the plaintiff to prosecute or to comply with any order of court.").

Dismissal under Rule 41(b) is "a harsh penalty and is to be imposed only in extreme circumstances." *See Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). Terminating sanctions under Rule 37(b) are also considered severe and are justified only where "the party's violations of the court's orders [are] due to wilfulness [sic] or bad faith." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011); *see also Comput. Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (finding willfulness where defendant "engaged in a consistent, intentional, and prejudicial practice of obstructing discovery by not complying with repeated court orders and not heeding multiple court warnings") (omitting quotations).

In determining whether to dismiss a claim for failure to comply with a court order, including a discovery order, the Court weighs the following five factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (omitting quotations).

Whether less drastic sanctions are viable turns on three sub-factors: (1) "whether the Court has considered lesser sanctions"; (2) "whether it tried them"; and (3) "whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

The Court need not make explicit findings regarding each factor; however, a dismissal requires a finding of "willfulness, fault, or bad faith" by the offending party. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (omitting citation).

**III. Discussion**

The County's Motion asserts terminating sanctions are appropriate because Castro refuses to pay the sanctions imposed, and there is no indication that additional sanctions

will lead to compliance. Dkt. No. 119 at 3. Because Castro refused to cooperate in his deposition, the County also claims Defendants are prejudiced in their ability to bring summary judgment motions. *Id*. at 5. In its supplemental briefing, however, the County agrees that evidentiary sanctions will cure the prejudice caused by Castro's failure to cooperate during his deposition. Dkt. No. 126 at 6.

Castro's Opposition claims his failure to pay sanctions is due to financial hardship and he has not abandoned the case. Dkt. No. 122 at 3. He argues sanctions "short of terminating the action" exist. *Id*. at 4. Regarding the lesser evidentiary sanctions proposed by the Court, Castro argues he has responded to written discovery on those topics (Dkt. No. 129 at 3–4) and he offers "to participate in a limited supplemental deposition . . . ." Dkt. No. 129 at 5.

*A. Five Factor Test for Terminating Sanctions*

The Court applies the five-factor test to determine whether a terminating sanction is appropriate and concludes it is not.

1. <u>The Public's Interest in Expeditious Resolution</u>

Castro refused to answer 107 questions at his March 19, 2026 deposition, necessitating a motion to compel and a sanctions order. He then failed to pay the modified sanctions amount of $2,956.05 by the May 15 deadline and has not paid any portion of the sanctions. These events have obstructed the orderly progression of discovery, hindering expeditious resolution. This factor weighs in favor of dismissal.

2. <u>The Court's Need to Manage Its Docket</u>

The Court has devoted substantial time in status conferences and motion hearings supervising Castro's discovery violations and failure to pay any part of the court-ordered sanctions. This diversion of the Court's resources was not attributable to any substantially justified discovery disputes, even considering Castro's pro se status. Instead, as the Court found in its original sanctions order, it is attributable to Castro's bad faith objections and refusals to answer relevant questions "intended to frustrate Defendants' ability to take a meaningful deposition." Dkt. No. 108 at 3. This factor favors dismissal.

3. <u>The Risk of Prejudice to Defendants</u>

Defendants have incurred costs and prejudice because of Castro's conduct. They incurred substantial costs and attorney's fees in attending the failed deposition. And they were denied the ability to take a meaningful deposition and obtain Castro's testimony about his claims. This prejudice to the defense favors dismissal. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) ("prejudice is palpable" where parties failed to appear at depositions and failed to comply with court orders to produce documents); *Meeks v. Nunez*, 857 F. App'x 949, 950 (9th Cir. 2021) (plaintiff's failure to participate in his deposition impeded defendants' ability to gather information and mount a defense favored terminating sanctions.). This factor weighs in favor of dismissal.

4. <u>The Public Policy Favoring Decisions on the Merits</u>

There is a strong public policy favoring deciding cases on their merits. *Transamerica*., 93 F.4th at 1147. Castro has continued to participate in the litigation following his deposition and the Court's sanctions award. He has served supplemental responses and produced financial account statements and banking correspondence, and he personally appeared at the May 19, 2026 status conference and June 26, 2026 hearing. Dkt. Nos. 117, 123, 129. Castro also submitted a sworn declaration affirming that he has not abandoned the case, wishes to proceed on the merits, and is attempting to comply in good faith with his obligations. Dkt. No. 122-1. This factor weighs against dismissal.

5. <u>The Availability and Adequacy of Less Drastic Sanctions</u>

The Court has sanctioned Castro for his deposition conduct. The Court granted the County's motion to compel Castro's deposition testimony, imposed monetary sanctions, and expressly warned that further discovery violations could result in dismissal. Dkt. Nos. 108 at 3, 128 at 17. The Court also granted Castro partial relief by restructuring the sanctions award to accommodate Castro's financial hardship arguments. Dkt. No. 114. Despite this, Castro has neither paid any portion of the sanctions award nor provided any assurance that he will do so. Dkt. No. 128 at 7–9.

Castro asks the Court to allow his case to proceed without limitation and suggests Defendants conduct a "limited supplemental deposition confined to those subjects identified by the Court." *Id.* at 5. Castro's offer of a "limited supplemental deposition," however, raises the specter of him again refusing to answer relevant questions. The Court also finds it fundamentally unfair to require Defendants to pay for a second deposition after they incurred the costs and attorney's fees of the first (which money was wasted because of Castro's refusal to answer numerous relevant questions). The Court, therefore, finds Castro's proposed lesser sanction of a limited second deposition paid for by Defendants is unacceptable.

Instead, the Court finds a lesser sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" is available. Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also Tacori Enter. v. Beverlly Jewellery Co*., 253 F.R.D. 577, 584 (C.D. Cal. 2008) (Where a party prohibits the opposition from fully examining topics adequately noticed for deposition, "an appropriate sanction, reasonably related to the subject of the discovery that was frustrated by sanctionable conduct, would be to preclude [that party] from presenting evidence regarding [those] topics."). Defendants agree that this lesser sanction would cure the prejudice from Castro's refusal to cooperate at his deposition. Dkt. No. 126 at 6. The availability of this lesser sanction, therefore, weighs against dismissal.

*B. Balancing the Factors*

Based on the foregoing, the Court concludes the first three factors (public interest in expeditious resolution, docket management, and prejudice to defendants) favor dismissal, and the fourth and fifth factors (public policy favoring disposition on the merits and the availability of less drastic sanctions) weigh against dismissal.

On balance, and considering Castro's continued participation in the litigation, his sworn assertions of financial hardship, and the availability of evidentiary sanctions, the undersigned concludes that dismissal is not appropriate.

*C. Scope of the Evidentiary Sanctions*

Defendants contend the Court should preclude Castro from introducing evidence about eight subjects he refused to answer at his deposition: (1) his ownership interest in the subject truck; (2) his purchase of the truck; (3) the sufficiency of funds in his accounts to purchase the truck; (4) his income; (5) his tendering of check no. 0106 as payment for the truck; (6) law enforcement's seizure of the truck from 14328 Apple Valley Road, Apple Valley, CA; (7) law enforcement's search of the Apple Valley property; and (8) law enforcement's arrest of Castro. Dkt. No. 126 at 6–15. In support, Defendants provide a transcript of the deposition documenting Castro's repeated refusals to answer. Dkt. No. 126-2.

Castro's Supplemental Brief does not challenge the eight topics Defendants propose for preclusion. Instead, Castro argues that his supplemental written discovery and document production on those topics are sufficient. Dkt. No. 129 at 3. Castro's responses to written discovery, however, are no substitute for Defendants' right to depose Castro on those topics. *Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Written interrogatories are rarely, if ever, an adequate substitute for a deposition."); *Covino v. Spirit Airlines, Inc.*, 2:20-cv-01039-GMN-NJK, 2021 WL 2955898, at *2 (D. Nev. July 14, 2021) ("Courts do not generally find depositions and interrogatories to be impermissibly duplicative of one another as they serve different functions."); *Scientific Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 WL 3671286, at *4 (D. Nev. Aug. 24, 2017), *aff'd*, No. 2:17-cv-00343-JAD-NJK, 2018 WL 2292811 (D. Nev. May 18, 2018) ("It is well-settled that one cannot avoid facing deposition questioning by simply referring to the production of related documents or the service of other discovery responses.") (omitting citations).

The Court has reviewed the deposition transcript and examined the topics of the 107 questions Castro refused to answer. Based on this review, the Court RECOMMENDS precluding Castro from offering evidence on the following topics:

1. Whether his signature appears on check no. 0106 to Escondido BCG in the amount of $76,386.43 (Dkt. No. 126-2 at 48);

2. Whether he was employed or had any income when he purchased the truck from Escondido BCG (*id.* at 7, 30–32, 35–36);
3. Whether his accounts at Mission Federal Credit Union ("MFCU") had sufficient funds to pay for the truck, whether he received any statements from MFCU, whether he took any steps to verify his account balances prior to purchasing the truck from Escondido BCG, whether his MFCU accounts were debited for the purchase of the truck, and whether any money was transferred to Escondido BCG for the purchase of the truck (*id.* at 9–10, 22–24, 35–36);
4. Why Castro went to Escondido BCG and whether he was looking for a specific vehicle (*id.* at 25);
5. Why the truck was at Apple Valley Road on May 26, 2025, and the stencil in the truck when it was repossessed (*id.* at 12, 14–16);
6. Whether he had ever purchased or financed a new vehicle (*id.* at 25–26);
7. The owner(s) of the residence at Apple Valley Road (*id.* at 12); and
8. The owner(s) of the various vehicles located at the Apple Valley Road address (*id.* at 33–34).

The Court also recommends prohibiting Castro from taking any depositions.

**IV. Conclusion**

Accordingly, **IT IS HEREBY RECOMMENDED** that the District Judge:

1. DENY Defendants' Motion for Involuntary Dismissal;

2. Issue an Order adopting this Report and Recommendation precluding Castro from presenting evidence on the topics listed above and prohibiting him from taking any depositions; and

3. Issue a final warning to Castro that any future bad faith conduct, including any failure to comply with any discovery or court order in this case, will result in dismissal with prejudice under Rule 37(b) and/or Rule 41(b).

Any objections to this Report and Recommendation must be made in writing and filed with the Court and served on all parties no later than **August 28, 2026**. This document

should be captioned "Objections to Report and Recommendation." Failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Any response to the objections must be filed with the Court and served on all parties no later than **September 4, 2026**.

**IT IS SO ORDERED**.

Dated: August 14, 2026

Daniel E. Butcher
United States Magistrate Judge